[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The five plaintiffs, Fred and Laura Westphal, Joan M. Walsh, Suzann H. Corsa, and Brian C. Kane, appeal to this court pursuant to General Statutes § 8-8 from a decision of the defendant Fairfield Planning 
Zoning Commission approving an application for a certificate of zoning compliance. Defendants Bridgeport Roman Catholic Diocesan Corporation and American Institute For Neuro-Integrative Development, Inc., sought and obtained approval to operate a school in a building that, while presently vacant, had been built for and used as a school. For the reasons stated below, the appeal is dismissed.
Defendant American Institute For Neuro-Integrative Development, Inc. filed on February 18, 1999, an application for a certificate of zoning compliance seeking approval to use a building that is located on Barberry Lane in Fairfield as a school for children with neuro-integrative disorders. (Return of Record [ROR], Exhibit 5.) The Bridgeport Roman Catholic Diocesan Corporation is the owner of the property and has agreed to sell the property to the American Institute. (ROR, Exhibit 5 and Exhibit 8 at page 2). The two-story building, which contains eight class rooms, was built in 1964 and was used from 1964 to 1971 by the Diocese of Bridgeport as an elementary school. After the application was filed, James L. Harman, on behalf of the Mill Hill Improvement Association, wrote a letter to the defendant commission requesting that a public hearing be held concerning the defendants' application. (ROR, Exhibit 6.) The commission held a public hearing on March 23, 1999. (ROR, Exhibit 8.) Thereafter, the commission's staff prepared and submitted to the commission a report on the application. (ROR, Exhibit 9.) On April 27, CT Page 6107 1999, the commission approved the defendants' application subject to two conditions: (1) the on-site school capacity shall be limited to forty-five full time students; and (2) a notice of filing shall be recorded on the land records. (ROR, Exhibit 10.) The plaintiffs thereafter timely appealed to this court.
Section 8-8 (b) of the General Statutes provides that "any person aggrieved by any decision . . . may take an appeal to the superior court. . . ." "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192,676 A.2d 831 (1996). The plaintiffs allege that they are aggrieved as abutting landowners or as owners of property that is within 100 feet of the land that is the subject to the application. Plaintiffs Joan M. Walsh and Brian C. Kane testified that they are abutting landowners. The court finds that plaintiffs Joan M. Walsh and Brian C. Kane are statutorily aggrieved. See Gen. Stat. § 8-8 (a)(1).
The plaintiffs allege that the commission acted arbitrarily, illegally and in abuse of its discretion. "Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably. . . . In appeals from administrative zoning decisions, the commission's conclusions will be invalidated only if they are not supported by substantial evidence in the record. . . . The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Internal quotation marks omitted.) Raczkowski v. Zoning Commission, 53 Conn. App. 636, 639,733 A.2d 862, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999).
The plaintiffs assert the following claims: (1) the notice for the public hearing regarding the application was inadequate; (2) the commission did not have the authority to act upon the application pursuant to sections 2.21 and 2.22 of the Fairfield zoning regulations; (3) the application did not comply with the regulations and, therefore, was defective; (4) the commission improperly relied upon a staff report delivered to the commission after the close of the public hearing; (5) the commission's decision was not supported by substantial evidence; (6) an application for a special exception, rather than an application for a certificate of zoning compliance, was the appropriate procedural vehicle; and (7) the commission improperly attached conditions to the certificate of zoning compliance. The court will address each of these CT Page 6108 claims.
 I Notice
The plaintiffs allege that "[t]he address shown on the application was inaccurate and ambiguous, thereby causing the application to be defective, as was the notice of the public hearing on the application." (Amended Complaint, para. 6, c.) The plaintiffs claim that the defendants incorrectly stated on the application (ROR, Exhibit 5) the address of the property, the number of the assessor's map, and the parcel number. The defendants response is twofold: (1) that the plaintiffs were not entitled to any notice, either personal or constructive, with regard to the filing of the application or its scheduling for public hearing and (2) the plaintiffs were not prejudiced by any alleged misstatement in the application. The court agrees with the defendants.
When the plaintiffs use the word "notice," they are not referring to a newspaper publication. There was no notice published before the hearing. None of the parties refer to a legal notice that was published before the hearing. The record before this court does not contain such a notice. What the plaintiffs claim with respect to notice is that the application inaccurately described the property and that, as a consequence, anyone who read the application would not be warned about the location of the property that was the subject of the application.
The application is a one page document. It is readily apparent to anyone reading the document that it relates to the use of a large building on a residential street, Barberry Road, and that the building, while vacant, has in the past been used as a school. The record shows that the plaintiffs were aware of James L. Harman's letter wherein he requested the commission to conduct a public hearing on the application. Plaintiffs Joan Wall and Brian Kane attended the hearing and testified. (ROR, Exhibit 8 at page 23, 33). Others submitted letters and/or testified. The record clearly indicates that the plaintiffs were aware of the location of the property and the nature and character of the proposed action that was contemplated by the applicants.
There are no statutory or regulatory mandates requiring that notice be given of a public hearing concerning an application for a certificate of zoning compliance.[1] Accordingly, the plaintiffs' claim with respect to notice does not implicate the commissions s jurisdiction. The alleged defect is one that can waived by attendance at the hearing. Schwartz v.Hamden, 168 Conn. 8, 15, 357 A.2d 488 (1975); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 46.1, p. CT Page 6109 415. The plaintiffs have not shown that they have been prejudiced by the description of the property on the application. They waived any defect with respect to notice by attending the hearing, .
 II Authority to Consider the Application
The plaintiffs' claim that the commission did not have the authority to consider the application because the zoning regulations give such authority to the Zoning Enforcement Officer. The defendants respond that the commission properly interpreted the regulations when it decided to act upon the application. The court agrees with the defendants.
"Generally, it is the function of the zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Internal quotation marks omitted.) Schwartz v. Planning ZoningCommission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). "Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the [regulations] is nevertheless a question of law for the court." (Citation omitted.) Coppola v. ZoningBoard of Appeals, 23 Conn. App. 636, 640, 583 A.2d 650 (1990). Section 2.31 of the zoning regulations states, in relevant part, that the "Zoning Enforcement Officer shall . . . be appointed by the Commission . . . [and] work under the supervision of the Plan and Zoning Director. . . ." In interpreting municipal zoning regulations, the court seeks "to discern the intent of the legislative body as manifested in the words of the regulation. . . . Since zoning regulations are in derogation of common law property rights, however, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning . . . and any interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected. . . . Common sense must be used in construing the regulation, and [the court] assume[s] that a rational and reasonable result was intended by the local legislative body." (Citations omitted.) Spero v.Zoning Board of Appeals, 217 Conn. 435, 441, 586 A.2d 590 (1991).
Section 2.21 of the zoning regulations provides that an "[a]pplication for a Certificate of Zoning Compliance involving a Residence District . . . shall be submitted to the Zoning Enforcement Officer . . . prior to the use or occupancy of any land, building or other structure." The regulations further provide, in section 2.22, that "[a]pplications CT Page 6110 involving matters not to be disposed of by the Zoning Enforcement Officer under Section 2.21 of the Zoning Regulations shall be submitted to him, but for reference to and action by the Commission . . . prior to the use of any land, building or structure."
The opponents of the application requested a public hearing before the commission. (ROR. Exhibit 6.) The commission, instead of leaving the decision on the application in the hands of the zoning enforcement officer, its agent, granted the request for a public hearing. The plaintiffs participated in the hearing and did not, during the hearing, object to the propriety of the hearing. The court concludes that the commission acted properly pursuant to sections 2.21 and 2.22 of the zoning regulations when it heard the defendants' application.
In attacking the procedure followed by the commission, the plaintiffs claim (a) that there were no standards for the commission to apply when deciding whether the proposed use was in compliance with the regulations and (b) that the plaintiffs were denied the opportunity to address issues that could have been addressed had the applicants applied for a special exception under section 27.0 of the regulations. As the defendants point out, the sole issue before the commission was whether the proposed use was consistent with the earlier use of the premises. Moreover, the plaintiffs addressed the standards set forth in section 27.0 of the regulations and the commission responded to the plaintiffs' concerns by imposing a condition that "the on-site school capacity shall be limited to 45 full time students." (ROR, Exhibit 10 and 11)
 III Contents of Application
The plaintiffs claim that the commission was required to disapprove the application because the application did not comply with the regulations. The defendants, on the other hand, contend that the application substantially complied with the regulations. The court agrees with the defendants.
Section 2.21.1 of the zoning regulations requires that an application include drawings showing the dimensions and use of the property.[2] The application included a property survey and a preliminary site plan. (ROR, Exhibit 12-13.) The plaintiffs point out that the defendants' application did not portray the dimensions or use of the existing buildings or the location and dimensions of off-street parking and loading spaces. The applicants, however, do not seek to make external alterations or modifications of existing structures or parking. The property survey (ROR, Exhibit 12) and the preliminary site plan layout (ROR, Exhibit 13) CT Page 6111 contain extensive information about the proposed use of the building, including parking spaces.
"While a commission may have discretion to deny an application because it is incomplete . . . the rule is that [an application] must be in substantial compliance with the applicable regulations. . . . Substantial compliance with a statute or regulation is such compliance with the essential requirements of the statute or regulation as is sufficient to assure its objectives. . . . What constitutes substantial compliance, of course, is a matter depending on the facts of each particular case." (Citations omitted; internal quotation marks omitted.) Mailloux v.Planning and Zoning Commission, Superior Court, judicial district of Fairfield, Docket No. 318723 (December 21, 1995, Levin, J.) (application for special permit and site plan); see also Wronski v. Woodbury ZoningCommission, Superior Court, judicial district of Waterbury, Docket No. 156700 (January 31, 2001, Leheny, J.) (application for zone change);DeAngelis v. Waterbury Inlands Wetlands Watercourses Commission, Superior Court, judicial district of Waterbury, Docket No. 132755 (May 16, 1997, Pellegrino, J.) (application to conduct activities within a watercourse).
The plaintiffs have not shown any prejudice resulting from the alleged omissions in the application. Moreover, they did not raise this issue at the hearing. By failing to do so, they waived their right to attack the petition on this ground. See Chesson v. Zoning Commission, 157 Conn. 520,527, 254 A.2d 864 (1969). "Modern procedural concepts to not favor tardy complaints concerning matters involving no prejudice or injustice which, through inattention or design, have gone unmentioned until too late for correction." Id. at 527. Under the circumstances, it was reasonable for the commission to conclude that the application substantially complied with the requirements set forth in § 2.21.1.
 IV Staff Report
The plaintiffs claim that the commission improperly relied upon a staff report that was prepared by the town planner and submitted to the commission after the public hearing thereby denying the plaintiffs due process. The defendants contend that the submission of the report was proper and consistent with Connecticut law. This court agrees with the defendants.
A zoning commission is entitled to the professional technical assistance of its staff. Spero v. Zoning Board of Appeals, 217 Conn. 435,444, 586 A.2d 590 (1991); McCrann v. Town Plan Zoning Commission ofCT Page 6112Bloomfield, 161 Conn. 65, 77, 282 A.2d 900 (1971). "The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." Norooz v.Inland Wetlands Agency, 26 Conn. App. 564, 573-74, 602 A.2d 613 (1992). In the present case, the staff report (ROR, Exhibit 9) discussed the evidence disclosed at the hearing and suggested possible courses of action depending upon the commission s ultimate factual findings. (ROR, Exhibit 9.) The court finds that the commission properly relied upon the staff report.
 V Commission's Decision
The plaintiffs claim that the commission's decision is not supported by substantial evidence. A review of the record of the proceedings before the commission reveals that the decision is supported by substantial evidence.
When the commission approved the application, it made three findings:
 1. The existing school use pre-dates the Special Exception standards of the Zoning Regulations.
2. The School use has not been abandoned.
 3. The application does not propose a change of use which requires a Special Exception.
Substantial evidence supports the first finding. At the public hearing, commissioner Maggiola questioned whether the special exception provisions applied to the application. (ROR, Exhibit 8, p. 40.) The assistant town plan and zoning director, James Wendt, explained that "the building was constructed on or around 1963, which predated requirements for special exception application[s] which came into effect in 1965." (ROR, Exhibit 8, p. 42.) The staff report contains the following review of the evidence: "Prior to the regulation amendments approved by the commission on October 26, 1965, schools were a permitted use in residential zones as of right. . . . The existing building was built in 1964, according to Tax Assessor's field cards." (ROR, Exhibit 9.) The commission could reasonably conclude that the existing school use predates the special exception standards delineated in the regulations. CT Page 6113
With respect to the second finding, that the school use has not been abandoned, the plaintiffs claim this concept is only applicable to non-conforming uses and was therefore irrelevant to the commission's decision. If this finding is irrelevant, it does not in such event take away the evidentiary foundations for the other finding. Where any one finding supports the commission's action, that is sufficient. Blakemanv. Planning Commission, 152 Conn. 303, 306, 206 A.2d 425 (1965). Nevertheless, there is no evidence of an intent by The Bridgeport Roman Catholic Diocesan Corporation to abandon the school use, other than voluntary cessation of school operations, which alone does not show a permanent abandonment of use. This finding is supported by substantial evidence.
Substantial evidence also supports the commission's finding that "[t]he application does not propose a change of use which requires a [s]pecial [e]xception." (ROR, Exhibit 10.) The parties agree that the original use of the premises "was as a parochial school also including a parish church." (Stipulation of Facts, ¶ 4.) The particular building subject to the application had previously been used as an elementary school between 1964 and 1971, and as a dance school in the early 1990s. (ROR, Exhibit 8, pp. 10-11, Exhibit 9.) These facts are sufficient to support the commission's finding that the building was used as a school.
The plaintiffs further contend that the applicant has not shown the not-for-profit status of the user. The record does, however, include evidence on this issue. The evidence includes a letter from the Internal Revenue Service (ROR, Exhibit 1), a letter from applicant's counsel (ROR, Exhibit 4), and a representation of the applicant that was made at the public hearing (ROR, Exhibit 8, at page 2). The not-for-profit status of the applicant was not even questioned at the hearing.
 VI Type of Application
Related to the plaintiffs' arguments regarding the evidentiary support of the commission s decision is the plaintiffs' assertion that an application for a special exception, rather than an application for a certificate of zoning compliance, was the proper procedural process for obtaining permission to use the building as a school. Accordingly, the plaintiffs argue that the commission incorrectly determined that the special exception provisions of the regulations were not relevant to the defendants' application. The defendants, on the other hand, argue that the commission properly construed its regulations and that its findings of fact regarding the relevance of the special exception provisions are supported by substantial evidence. CT Page 6114
The zoning regulations provide that "[t]he commission may grant a [s]pecial [e]xception for the establishment of a use designated as a [s]pecial [e]xception use in these Zoning Regulations. . . ." (Emphasis added.) Fairfield Zoning Regs., § 27.1. Section 5.1.4 of the regulations designates as a permitted use "[s]ubject to the securing of a Special Exception . . . the following . . . When not conducted as a business, or for profit, schools, colleges or universities. . . ." After holding a public hearing and receiving a staff report on the matter, the commission determined that the applicants were not establishing a use but were continuing the use of the building as a school. (ROR, Exhibit 10.) The commission also found that the use of the school predated the above mentioned requirements for a special exception. (ROR, Exhibit 10, Stipulation of Facts, ¶ 2.)
At the hearing, the persons who opposed the application neither objected to the type of application that was filed nor contended that the American Institute should have applied for a special exception. While one member of the commission inquired as to whether the Institute should have applied for a special permit rather than a certificate of zoning compliance (ROR, Exhibit 8, at p. 40), no one responded in the affirmative. Nobody in opposition to the application disputed the procedure.
The commission determined that a special exception was not required. The record supports such a conclusion. The commission correctly interpreted the zoning regulations and applied them reasonably to the facts. See Schwartz v. Planning Zoning Commission, supra,208 Conn. at 152.
 VII Conditions
The plaintiffs finally argue that the court should sustain this appeal because the commission conditionally granted the defendants' certificate of zoning compliance. The commission imposed two conditions: (1) the on-site school capacity shall be limited to forty-five full time students; and (2) a notice of filing shall be recorded on the land records. (ROR, Exhibit 10.) The plaintiffs contend that the zoning regulations do not authorize the commission to impose conditions on certificates of zoning compliance.
"[M]unicipal land use agencies may attach conditions to approvals of an application." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 21.14, p. 478. The commission imposed the CT Page 6115 conditions in response to the concerns expressed by the neighbors as raised at the public hearing. The plaintiffs were benefitted by the condition, which the American Institute proposed. The commission did not act unreasonably, arbitrarily or illegally.
For the foregoing reasons, the plaintiffs' appeal is dismissed.
THIM, J.